The first case for argument is 17-2421 Eko Brands v. ITC. Mr. Lowe, whenever you're ready. May it please the Court. David Lau on behalf of Appellants, Eko Brands and Espresso Supply. Appellant Eko does not deny that it defaulted in the original underlying violation proceeding. As previously explained, it had good reason for doing this. It was a small Washington startup company with extremely limited resources and understanding, insufficient to fight an ITC proceeding across the country. It had ceased all production and product importation as of that time, moving its manufacturing to the U.S. And it was engaged in a federal district court action involving not only the identical 320 patent infringement, but also its own patent infringement claims at that time. Well, the law is the law. You can't explain the default and say we didn't have the money. You're correct, Your Honor, but that does not... It's not a legal argument. Sure. Just giving some background, but it doesn't alter the fact that it did actively participate in the subsequent enforcement proceeding. And 337K and Commission rules allowed during that proceeding for it to rigorously challenge the remedial orders and seek their rescission. And we believe, Your Honor, that under 337G1, which does not apply, and 337K, as well as public policy, there's a number of very good reasons why those orders should have been rescinded in this case. Well, isn't there a temporary rescindment here pending the resolution of an appeal from the district court? And why wasn't that corrected? Because it should have been permanent, Your Honor, because there should not have been... There was no domestic industry. And at the time, those rescissions should have been completely gone away at the same time. So, in other words, a temporary does not remove the cloud that's over Echo, doesn't allow them to proceed to get financing, to proceed to conduct their business. ARM and other competitors are using the fact of that continued injunction out there in the marketplace to erode their marketplace and put them as a disadvantage. They're imminently and continue to be prejudiced by this ongoing remedial orders that are in place. Your Honor... Do we have any idea what the appeal status is of our case, the District Court Enforcement Act? Yes, Your Honor. Just in June of this last year, that case went to trial. At that trial... If we affirm it, then this whole case goes away, right? Or no? We don't know that for sure. We filed a... Echo filed a petition after the June trial came out finding the claims invalid as well as not infringed. And in response, they temporarily... The ITC temporarily suspended it, but they didn't... They said pending appeal. They did not say there that if appeal came out, what would happen? What's the impact of the 103 challenge on Claims 1 and 10? What's the impact of that, Your Honor? What's up for grabs in the pending appeal to us from the District Court invalid decision? That's a 103 rejection, right? Right. It has nothing to do with Claims 1 or 10. They weren't asserted. What does it do with 8 and 19? Correct, Your Honor. The Washington case only dealt with Claims 8 and 19, which were the only claims that were asserted in the ITC proceeding that remained after this court affirmed the invalidity of the rest of the claims. Right. So you're suggesting that even if we were to... If we were to affirm the invalidity determination of the District Court, you're saying it's still unclear what the government would do in this circumstance? It is. I think what the government should do is what they should have done before it and rescind those claims because there will be no more valid claims at that point. But based on what the government submitted, all it said was that we're going to suspend it pending appeal. They didn't say if the appeal comes out one way or the other, what would happen? That leaves echo again up in the air what's going on in addition to all the other harm of the ongoing remedial orders. Well, getting back to the first point that you and Judge Rory had an exchange over, it's of your own making. I mean, you may have good reasons that justified you're doing a default under the earlier proceeding, but that's the way it is. So how do you get around that? And it had the right to do so under 337K. Now, that gets to the point about whether or not 337G1, which is what the government relies on... The arguments you're raising could have been raised in the original proceeding if you'd been there. True, Your Honor. But still, when the enforcement proceedings were pursued... If you'd been there, you would have then had to appeal within the timely period and you didn't do that. The relief you're seeking is in the nature of 60B type relief. With due respect, Your Honor, I think the relief we're seeking is under 337K, and others would say that there's a changed circumstance or an error in the law that we're entitled to go in during the enforcement proceeding and seek rescission of the remedial orders. And both of those things apply here. Under 337G1, which the government likes to rely upon, suggesting there's a presumption... One is that you've got a ruling that your product didn't infringe. Correct. That's one changed circumstance. And the answer to that from the point of view of the decision maker here was we don't grant rescission orders based on that. You can't point to one where we've done it. So we don't think in exercising our discretion, we don't think we're going to grant that relief. With respect to that, Your Honor, they have done it. That's part of the problem is the inconsistency that's being applied by the government here. There's inconsistency across the board. We cited in our brief, and in fact, the commission admitted that there are a number of cases where in a non-infringement finding by a district court, they did in fact grant rescission as well as in cases of invalidity. And there is really no reason to treat those two differently. You've got a federal court that has found that these claims do not apply. And in that situation, that is justification for a changed circumstance, which should mandate that the commission should rescind those orders. We cited cases on both the non-infringement and the invalidity. And now since June of this past year, we have the federal court not only finding that they're non-infringed, but claims 8 and 19 are invalid as well. And we went back to the commission and say, well, look, now we've got invalidity, which you admitted was a changed circumstance, rescind them at this point. And their response was to not do that. If you rely on district court's determination of invalidity, what happens if that's reversed on appeal here? If you're saying to the government, because the district court has determined these patents are invalid, you need to go ahead and rescind it. What happens if we reverse that on appeal? Well, then if the parties feel like that they are so... If they've given you the permanent rescission, they would say, well, we're taking that back and we're reinstating the rescission order. Or leave it to the complainant underneath to go in and start it again. Well, but again, the wait and see is... They said, we'll wait and see what happens. The problem, though, Your Honor, is that the prejudice... Say to a defaulting party who really has no standing at all, we'll be very generous and we'll give you a temporary suspension, rescission order. But that's not good enough. It creates the cloud and the prejudice that we outlined in our brief and we talked about here. Think of the public policy. You've got claims now of a patent which have been found not infringed, that have been found invalid, in which this court affirmed all the other independent claims lack... What did the commission mean when they said, moreover, you intentionally default as a matter of strategy and you suffer a consequence of that choice? They drop a footnote that says, in circumstances like this, you simply just don't have any standing to complain. For me, the elephant in your room is your default status. You thumbed your nose at the commission. You did it contumaciously. You didn't even bother to reply to the adversary's motion seeking to put you in default. So you utterly thumbed your nose at the commission's authority in this case. Right? And in price to that, the commission's saying, I'm sorry, we're not going to grant you the relief you asked for. What's wrong with the commission saying that? Well, several things, Your Honor. First of all, 337K expressly provides that even in defaulting situations, during an enforcement proceeding, that my client is entitled to go and rigorously defend its position. Which includes the fact that because there is no domestic... The language of that statute saying, even in defaulting circumstances? It doesn't preclude defaulting circumstances. And it's been applied several times. You make it sound as if it says, even in defaulting circumstances. It doesn't, Your Honor. And I'll cite to the inconsistency of certain motorized self-balancing vehicles. The language of K, read me the language of K. Where it says in K that even if you're a defaulting party, the commission will treat you as though you weren't. I can pull that up, Your Honor. I don't think it says one way or the other. You left the impression with me that you think that's what the statute said. If I left the impression that it specifically accepted or included defaulting parties, I didn't mean to say that. You left that impression. Okay. What I'm saying, though, is that my understanding is that 337K, as well as commission... There's nothing in it expressly excludes. One way or the other. That's correct, Your Honor. And the understanding, the law, if you take footnote... What was it I said? Footnote 27, and you do a little deep research behind that, you'll find that throughout the judicial system, defaulting parties don't have any luck when they come back asking for a Rule 60 type relief. What you're relying on in 337K, is it K2B? In which case it says relief may be granted, and you've got partial relief. And for the reasons outlined, Your Honor, that partial relief is insufficient. If I may, part of the point is during this rescission proceeding that was rigorously disputed by our client, pointed out that there is an inconsistency here. Because the commission in, for example, motorized self-balancing vehicles, in a nearly identical situation, just a month before, had found in a situation where there's both defaulting and non-defaulting parties, and the issue of domestic industry came up, which they are bound to follow and find in any case, they found because domestic industry wasn't found there, they applied that to the defaulting parties. Defaulting parties that are hailed back into a subsequent enforcement proceeding still have rights, even though they were defaulting before. And part of those rights are they can challenge and say for one of any reasons, either there's a changed circumstance, as there was here, findings of non-infringement and invalidity. Speaking of that, you had mentioned a few weeks ago, a few minutes ago, that with respect to changed circumstance, there are cases where we've applied that in a non-infringement as opposed to an invalidity determination. And I guess I thought the cases you had cited really all dealt with where you showed the commission rescinded its orders. It was always based on invalidity or unenforceability. Am I wrong about my reading of those cases? Your Honor, with due respect, we did cite agricultural vehicles, which was a 487 investigation, wire electrical discharge, which was a 290 investigation. There were several situations where rescinded remedial orders with respect to products where there was infringement as opposed to invalidity involved in those situations. We're saying that the distinction between invalidity and non-infringement findings by a district court or on remand or in any situation should not be treated differently. It's a changed circumstance. It's a situation, if you throw in the public policy considerations, which is, why is there an order that's continuing right here where, under the circumstances, the claims are either not infringed or invalid? Where's the public policy? Where's the protection of not only my client but of the public and good? Your Honor, I think I'm going to end my rebuttal. Thank you. Good morning. Good morning, Chief Judge, and may it please the Court. If I can, I think I'd like to start with just a couple of points and characterizations of the cases that counsel just made, and then I'll explain, if I can, the relevance of the pending district court appeal in this court, and then I'd like to talk about standing. To the best of my knowledge, there are no non-infringement decisions concerning Rule 60 that have been cited here. What about the cases he just named? The cases that he just named, Agricultural Vehicles, was a commission case that involved this court's reversing the commission. And on remand from this court, the commission applied the circuit's holding. So there was a remand after a direct appeal. There was not some ancillary proceeding for enforcement or modification. Was it infringement or was it invalid? It was infringement, but it was a direct appeal. It was just a simple law of the case issue. A case went up for direct appeal. This court reversed the commission's findings of infringement, and the case came back to the commission for further fact-finding. We, of course, apply the court's orders of judgment when matters come back to us on remand. It's not an issue of a collateral proceeding years later by a defaulting party. Wire electrical discharge, that's a case where the accused infringer did worse than Echo did here. That's a case where there was an intervening district court finding of non-infringement that came up while the enforcement proceeding was going on. I don't think there was a defaulting party there. I'd have to look. And what the commission did in that case is the commission dismissed the enforcement complaint without prejudice to refile. In this case, with respect to the enforcement complaint, Echo substantially prevailed as to its actual conduct that it was engaged in. And the commission found that that wasn't a violation of Section 337. So neither agriculture vehicles nor the wire electrical discharge case that counsel just cited supports counsel's position. As to the pending appeal in this court, if this court upholds the finding of invalidity, the case goes away. Now, we filed as soon as we could last August a notice. Well, your friends seem to suggest that there's some ambiguity in terms of what you may or may not do if validity is affirmed. I'm looking back at the 28J letter. I'm not sure. Respectfully, I think that that's a little bit feigned. I think the argument would be that the commission would choose to suspend the operation of its orders while there's a district court finding of invalidity. But if this court finds the patent invalid, the commission is going to suddenly find that the patent should be enforced. That doesn't make sense on its face. It doesn't make sense. Presumably, the reason why the commission entered the order temporarily suspending was because they saw this possibility that we would affirm. Yeah, and that's exactly. Why else would they have done that?  It doesn't make any sense. It makes sense. And in the cases cited in the appellant's brief, going all the way back to SSIH, going back to the early 1980s to the beginning of this court, that's been the commission's practice. In this case, after the district court, and it's not part of the record here. It was afterward. But after the district court found the patent claims invalid for obviousness, we got a petition to rescind the order. And the patentee said, well, we don't object so long as you take into account the possibility that it gets reversed. So your friend argues that there's no policy distinction to be drawn between a finding of invalidity and a finding of non-infringement. Well, we respectfully disagree. The difference is that once a patent is found invalid, there's no way to infringe it. Whereas what we're dealing with here with respect to infringement or non-infringement are the specific products that the appellant is bringing into the United States and the mental state in connection with that. If the appellant wants to, for example, change its products so that it has a long and narrow passageway, that doing so would improve its products. Or if it's stipulated that there's no dispute that the products that are being imported are the same products that were found non-infringed. Well, but the point of the exclusion order is, and this is something that the ALJ mentions at page 3636 of the appendix, mere compliance with the remedial order doesn't mean that you get rid of it. So to this point, right now, we know from... We know right now that... The likelihood of future infringement is sufficient to leave an order in place? The possibility of it is certainly sufficient to leave an order in place, at least when you've got a tactical default, as what happened here. You know, what we have here also that we have to remember is that in the proceedings that are on review... Would the likelihood of future infringement be sufficient to leave an order in place for a perfect litigant, someone who appeared and cooperated? And how important is it that we have a defaulter here? I don't know the answer to that. I know that Rule 60... You said that. Well, Rule 60 commits these things to the commission's or to a district court's discretion. Congress certainly intended the commission expressly to have the same discretion as a district court. We don't have these cases involving defaulters very often. We have a long history going back to SSIH in 1983. The commission's order made it sound as if they sort of have a policy of not suspending or getting rid of orders where there's been a finding of non-infringement as to a particular party. To the best of my knowledge, the commission has never done that. And maybe even more importantly, a district court has never done that. We haven't found a single case, and appellants have never pointed to any where... There's a history of enforcement orders over the years, right? I mean, you have an institutional knowledge of all kinds of enforcement challenges that are brought. And if a challenge is brought and it's determined that the product in question is not infringing, then the enforcement effort fails, right? Then the enforcement effort fails, but the... And typically, do the parties then seek to have the order revoked? Parties don't seek to have the order revoked. When their actual conduct is protected by a finding that that conduct doesn't infringe, revocation of the order is tantamount to seeking an advisory opinion. You know, we'd like to do whatever we want based on the fact that our current conduct doesn't infringe. That's what I was trying to get, whether it's customary policy simply to leave an order in place, even though it's been determined that particular goods that have been challenged in an enforcement proceeding don't infringe. That's exactly right, because there could be other goods. There could be other goods imported at that same time. There could be other goods imported a couple of years from now. What I'm hearing from counsel is that they don't like the cloud or the fog, I think may have been the language that was used, of the default judgment standing out there. But that's the risk that they took when they defaulted. The actual, the conduct, there are three types of conduct that have been at issue here. And if I can just get through that, maybe that'll help clarify stuff. In 2014, ECHO brought the entire pods into the United States, and they defaulted in commission proceedings. And the commission's default then found, therefore, that those pods, which were imported entirely from China, were infringing. By 2016, ECHO was importing only its screens and rubber or silicone O-rings. It was doing all of its plastic manufacture in the U.S. And this entire enforcement and modification proceeding was about whether that conduct, whether merely importing the O-ring and the screen, would violate the order. And the commission found that it wouldn't. The commission said there's no violation as to that. You have a good faith belief of non-infringement. And that determination is not on appeal, but it benefited ECHO. Now, for ECHO to be aggrieved, ECHO would now have to argue by declaration, as this court requires, at the earliest possible opportunity, as this court also requires, that it would actually like to go back to bringing all the stuff in from China. That it would like to go back to doing all of the plastic molding in the United States. But that's just simply not supported by the record here. It's not supported in the opening brief, which touts the domestic manufacturer. It's not supported in the declarations of record here. I mean, we have a declaration of ECHO's president when he says at appendix page 2105, we wanted to manufacture the plastic stuff domestically. At appendix page 2111, question and answer 79, it's good to have redundancy of suppliers. At appendix page 2114, question and answer 89, we were going to bring the plastic capsule production back to the United States while the original ITC investigation was still going on. So as to the conduct that ECHO actually engages in and has demonstrated through the sworn declaration of its president that it intends to engage in, all of that activity is protected. Even putting to the side the fact that the commission orders aren't even enforced because of a later determination of invalidity. So there's no threat of harm here, much less in a way that would be substantiated by ECHO to support standing, even independent of the subsequent invalidity. So the status of 18-2215, ECHO and Rivera's appeal, is that it's in the middle of briefing. It's one of these cross appeals with two rounds of briefing. This court will get that case off its books in the better part of a year. We don't think that the court needs to wait that long to take this case off of its docket. Let's assume we disagree with you on standing. What do we do with respect to the temporary rescission? I mean, you haven't asked that we would stay, for us to stay this appeal to see what the outcome is. It's a different case, is it not, whether or not we affirm the invalidity determination. It's a different case, but since the commission's orders aren't in place, it's not like the commission is adversely affected by this court's... Yeah, but what if we reverse on the validity? So how do we decide this case beforehand and then come back? If you... File again? I mean, what happens if we were to reverse invalidity? If you were to reverse invalidity and you were to uphold, you would also have to uphold... You have to reverse on infringement also, I think, in that case. If you were to do all of that... Well, infringement's not in front of us. Infringement is in front of you in 2215. 2215 being the appeal. Sorry, the direct appeal from the district court proceeding has all of these issues. The claim construction of passageway, whether that is infringing or not. And in this case... That's a final decision? That's a final decision. The final decision, the wrap-up for the whole proceeding. The wrap-up for the whole thing, and you've got both parties having all their arguments, and the patentee challenged the finding of non-infringement and also challenged the finding of... Well, if we reversed across the board, that's start all over again. If you reversed across the board, yeah, we would be starting all over again. But what does that mean? I mean, so we take care of this case again, let's assume we... Well, it means ECHO's in the deep duty. Well, ECHO, at that point, the patent claims would not be invalid. At that point, its good faith belief of non-infringement would no longer hold because... They would have been found to infringe. They would have been found to infringe. Their basis for not infringing was the shape of a passageway. So at that point, yeah, they would be potentially liable in another enforcement proceeding if they were bringing in products into the United States. What I didn't get to a couple minutes ago, and I see I only have two minutes left, is in its reply brief on standing, ECHO talks about the $0.37 cost of bringing O-ring production and screens back into the United States. That's completely irrelevant because what the commission adjudicated here was the importation of those components. ECHO can bring all that stuff into the United States. It's entitled to import it. Well, whether it's bringing it or not, what ECHO is trying to do is to get the order entirely eliminated, right? So that they will not be exposed to any exclusion order at all. They're temporarily, they have a temporary order that's protecting them at the moment. But they say, I want, I'm still, I want, my relief I want is to get rid of the permanent order, right? So it seems to me that they have standing to ask that relief. And that that relief is bigger and better than what's there now. And so they have standing to proceed. Okay. What I would say is that for the actual conduct that ECHO engages in, whether, if it's domestic manufacture of everything, the commission isn't even involved. So don't go, you know, you don't go pass go. Yeah, but the existence of the remedial orders, if they're in place, the appellants here don't have the ability to import certain items, right? Only, they don't have the ability to import the plastic. Their business is restricted. In a way that doesn't affect them, because in the declaration here, they've said we wanted to do this domestically. But if we could just put, I have less than 30 seconds left. There are a couple of things I just want to clarify. Don't worry about the clock so much. Just answer our questions. It's not a reason tonight. So they cannot perform, they cannot import certain things. Just because they said, well, right now we'd rather do that. They are constrained by the remedial order in terms of what they have the ability to import, right? Yes. They cannot import the plastic that they proudly manufacture in the United States. You're saying that they don't have standing to challenge this, because they've told us that they really are not, don't have any plans or are not currently importing something that would be bumping up against their remedial order. Correct. If this court finds that. But it still constrains them, does it not? What if tomorrow they change their minds? They're still constrained. They haven't signed in blood that they never have any intent and they're never going to be in a position of wanting to import certain items that are included in the remedial order. I mean, that's the definition of an advisory opinion. The question isn't whether they might do it. The question is whether now is the time to do it. The conduct that you say is barring them from being able to get any relief, they're saying we took that in order so we wouldn't be in trouble. We took that act because of the outstanding order. That's actually not what the opening brief says, and it's also not what, you know, that would have been a good argument for them to make in this case. But if you look at pages 2105 through 2114 of the appendix, which is the declaration of their expert, that wasn't their position. Their position that they have on the record here was that they brought that plastic, they were going to bring the plastics into the United States anyway, and that they proudly did it. And that's what their opening brief says. In the reply brief, they flip their story. They don't do it with the declaration. They don't do it in any tangible, concrete way. If I could have one minute, just thank you. On the merits here with respect to the different patent claims that were at issue, the responding party in this case, Solofil, never challenged the validity of claims one in 10 for the domestic industry. Domestic industry isn't a jurisdictional requirement, and the commission found consonant with Lanham, and now with Laerdal in connection with the defaulter, that the commission wasn't going to challenge the allegations. That's why I asked whether one in 10 were involved in the district court action. What's that? One in 10 of the basis for continuing to find a domestic industry, right? One in 10 were the basis for the domestic industry. And that's why I asked in the very beginning whether one in 10 were up for grabs in the district court action. And one in 10 was, the district court action is a declaratory judgment. If they're not at issue. Doesn't affect one in 10. It doesn't affect one in 10, but it's Echo who was the declaratory plaintiff. It's their fault. I mean, keep in mind. That's what I mean, but I mean the district court action will have no effect on the domestic industry issue as decided by the commission as we see it right now. I believe that to be. I believe that to be true, but they also can't infringe if eight and 19 are finally found to be invalid. That's true. I think the last point I would make, and I really appreciate the chief judges indulgence is that. We are not aware of a case involving, as I said before, a district courts elimination of its final judgment based on non infringement. More than that, in the cases involving. Invalidity and unenforceability. We're not aware of. A district court determination to, to eliminate its orders after all the appeals have run. You've got cases like Mendenhall and Thompson Hayward, which when one proceeding is on appeal, this court will allow a party to take advantage of a subsequent district court, invalidity determination or unenforceability determination. The commission order here became final in 2016. No appeal was taken. And this is merely a collateral attack on the commission's default finding and is precluded by this person. He has a lot of decision. Thank you. Thank you. Thank you. Your honor. What's the commission? You got the answer that I assume you wanted from the government, which is that if the. Invalidity determination of the district court is affirmed on appeal. We're done. Finally. Yes, we did. If we can take that to the bank, then we did, but that still doesn't change the fact what the commission is asking for is an open-ended approach, which violates leer versus Atkins and everything else that's ever been going on right here. There is no domestic industry. The commission has an obligation to find domestic industry. The ALJ below found there was no domestic industry. The commission refused to say one way or the other. It cannot then rely upon any presumption due to the defaulting underneath to continue these remedial orders at this time. Rescission is the only option. There was no basis. Three 37 G does not apply in a situation as here and layered all, and all the others are distinguishable where you have both non-default. Claims one and Tanner and play. Sorry, by default, you agreed that claims one and Tanner and play in the proceeding. In this proceeding. Yes, but there was no domestic industry that was found with respect to those. We even was a bird. They have vermin. No, this, that those claims are there. And that the patentee is practicing. Those claims is in the record. The ALJ found that not to be the case in this commission, neither found that one way or the other. There is no presumption of domestic industry in this case, even if this court were to hold that three 37 G one applies, which for the reasons we outlined, we don't believe it does. There is no presumption of a lack of a finding does not amount to a finding that can be presumed for this court to review on appeal for that reason. There there's an obligation from the commission below to find domestic industry. And it failed to find that here. Now, remember claims five and 18 were both held invalid for lack of written description affirmed by this court, which has never challenged by you, not even challenged by you in the district written description. That you made a challenge, but, Oh, you were a little Johnny come lately. That that's true and acknowledged. Certainly true. That's true in the knowledge you're holding. Contumaciously defaulting in front of the commission, Johnny come lately in the district court. And yet you're arguing that we should somehow take the lack of written description as some claims and work on it on the other. Your honor, clients have warts and they come in all shapes and sizes, but what cannot be disputed is that during the enforcement proceeding where they were able to, and did rigorously challenge. Sorry, you won in the enforcement, but we didn't win. We still, we still have this cloud that's hanging over it and crushing their ability to do what they want to do. Whether that's important or not is not about the cloud. The rescission order is about the cloud and the enforcement proceeding. You walked away with a win, but without removing the rescission, so my point is that what happened in the enforcement proceeding is overdone and you don't have any grounds to complain about that. We do your honor. In fact, this appeal that we're at right here is from the ALJ that found no domestic industry said that the order should be rescinded. The commission then refused to consider the domestic industry. Didn't rule one way or the other. That's what this appeal is from. We're saying that they were mandated. Your time to raise that was in the enforcement proceeding. We did your honor. In the enforcement proceeding, we did petition to have them rescinded because of lack of domestic industry and the commission denied that as well. And that's what part of the rescission proceeding, not in the enforcement. They were consolidated. They were consolidated. Right. Your honor. Final thought. Time is expired. Final, final thought is your honor with, we respectfully request that you reverse below and rule in favor and remove this cloud over echo who is a Johnny come lately, but has done its best as a small company to do what's right in this case. Thank you. We thank both sides for cases. Thank you.